# Illinois Official Reports

## Appellate Court

---

### *JL Properties Group B, LLC v. Pritzker*, 2021 IL App (3d) 200305

---

| | |
|---|---|
| Appellate Court Caption | JL PROPERTIES GROUP B, LLC; MARK DAUENBAUGH; and STEVEN COLE, Not Individually But as Trustee of the ALI (401K) Trust FBO Steven Cole, Plaintiffs-Appellants, v. JAY ROBERT "JB" PRITZKER, in His Official Capacity as Governor of Illinois, Defendant-Appellee. |
| District & No. | Third District<br>No. 3-20-0305 |
| Filed | May 21, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 20-CH-601; the Hon. John C. Anderson, Judge, presiding. |
| Judgment | Affirmed in part and dismissed in part. |
| Counsel on Appeal | James V. Noonan and Solomon Maman, of Noonan & Lieberman, Ltd., and Jeffrey Grant Brown, of Jeffrey Grant Brown, P.C., both of Chicago, for appellants.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, Sarah A. Hunger, Deputy Solicitor General, and Evan Siegel, Aaron Talen Dozeman, and Caleb Rush, Assistant Attorneys General, of counsel), for appellee. |

Sarah Megan, of Prairie State Legal Services, Inc., of West Chicago, and Lawrence Wood, of Legal Aid Chicago, of Chicago, *amici curiae*.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Presiding Justice McDade specially concurred, with opinion.

## OPINION

¶ 1    The plaintiffs, JL Properties Group B, LLC (JL Properties Group), Mark Dauenbaugh, and Steven Cole, sued the defendant, Governor Jay Robert "JB" Pritzker, in his official capacity, for declaratory and injunctive relief related to moratoria the Governor has imposed on residential eviction orders in Illinois during the COVID-19 pandemic. The circuit court granted the Governor's motion to dismiss and denied the plaintiffs' request for a preliminary injunction. On appeal, the plaintiffs argue that (1) the circuit court erred when it dismissed four counts of the complaint for failing to state claims upon which relief could be granted and (2) the court erred when it denied the plaintiffs' request for a preliminary injunction. We dismiss in part and affirm in part.

¶ 2                                    I. BACKGROUND
¶ 3                    A. The Governor's Response to the COVID-19 Pandemic
¶ 4    On March 9, 2020, the Governor issued a proclamation declaring all counties in Illinois to be disaster areas due to the COVID-19 pandemic. Proclamation No. 2020-38, 44 Ill. Reg. 4744 (Mar. 9, 2020), https://www2.illinois.gov/sites/gov/Documents/CoronavirusDisasterProc-3-12-2020.pdf [https://perma.cc/HF89-Y8HD]. The proclamation was made pursuant to section 7 of the Illinois Emergency Management Agency Act (Act) (20 ILCS 3305/7 (West 2018)) and was to remain in effect for 30 days. *Id.*

¶ 5    Due to the ongoing nature of the pandemic, the Governor issued subsequent 30-day disaster proclamations on April 1, April 30, May 29, June 26, July 24, August 21, September 18, October 16, and November 13, 2020. State of Ill. Coronavirus Response, https://coronavirus.illinois.gov/s/resources-for-executive-orders (last visited May 17, 2021) [https://perma.cc/F98W-KR9G]. All of the Governor's proclamations were purportedly based on section 7 of the Act (20 ILCS 3305/7 (West 2018)).

¶ 6    The Governor also issued numerous executive orders related to the pandemic. The Governor's executive order of March 20, 2020, included, *inter alia*, an order suspending the enforcement of residential eviction orders:

        "Pursuant to the Illinois Emergency Management Agency Act, 20 ILCS 3305/7(2),
        (8), and (10), all state, county, and local law enforcement officers in the State of Illinois
        are instructed to cease enforcement of orders of eviction for residential premises for the
        duration of the Gubernatorial Disaster Proclamation. No provision contained in the
        Executive Order shall be construed as relieving any individual of the obligation to pay
        rent, to make mortgage payments, or to comply with any other obligation that an

- 2 -

individual may have under tenancy or mortgage." Exec. Order No. 2020-10, 44 Ill. Reg. 5857 (Mar. 20, 2020), https://www2.illinois.gov/Pages/Executive-Orders/Executive Order2020-10.aspx [https://perma.cc/TY96-2HUD].

In support of this order, the Governor stated that "the enforcement of eviction orders for residential premises is contrary to the interest of preserving public health and ensuring that individuals remain in their homes during this public health emergency." *Id.* The March 20, 2020, executive order also contained a stay-at-home order providing that Illinois citizens were permitted to leave their residences "only for Essential Activities, Essential Government Functions, or to operate Essential Businesses and Operations." *Id.*

¶ 7 On April 23, 2020, the Governor issued an executive order that suspended residential eviction actions except in certain circumstances. The order stated:

"A person or entity may not commence a residential eviction action pursuant to or arising under 735 ILCS 5/9-101 *et seq.*, unless a tenant poses a direct threat to the health and safety of other tenants, an immediate and severe risk to property, or a violation of any applicable building code, health ordinance, or similar regulation. Nothing in this Executive Order shall be construed as relieving any individual of the obligation to pay rent or comply with any other obligation that an individual may have pursuant to a lease or rental agreement. This Executive Order does not supersede any provision of any other prior Executive Order." Exec. Order No. 2020-30, 44 Ill. Reg. 8108 (Apr. 23, 2020), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-30. aspx [https://perma.cc/DP4B-D6NF].

The April 23, 2020, executive order also extended the stay-at-home order for another 30 days. *Id.*

¶ 8 The stay-at-home order lapsed in May 2020 and has not been reinstated. Nevertheless, the Governor extended the eviction-related moratoria in each of his subsequent 30-day-disaster proclamations. The Governor's July 24, 2020, executive order stated that the moratoria on residential eviction actions and enforcement of eviction orders "shall remain in effect to allow the Illinois Housing Development Authority to distribute monetary assistance under the Emergency Rental Assistance and Emergency Mortgage Assistance programs directly to landlords or property owners on behalf of eligible tenants or, for eligible homeowners, directly to the mortgagor's loan servicer." Exec. Order No. 2020-48, 44 Ill. Reg. 13134 (July 24, 2020), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-48.aspx [https://perma.cc/9LU3-QMQM].

¶ 9 At the time of oral argument, the eviction-related moratoria remained in effect pursuant to the Governor's November 13, 2020, executive order. Exec. Order No. 2020-72, 44 Ill. Reg. 18802 (Nov. 13, 2020), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder 2020-72.aspx [https://perma.cc/5WDE-Z5TK]. As noted above, the moratoria have since been extended through several successive executive orders and remain in effect at the time of this disposition.[1]

---

[1]During oral argument, plaintiffs' counsel stated that the April 23, 2020, executive order (Order 2020-30) was the order that the plaintiffs had directly challenged and that several executive orders had since superseded that order. (At the time of this disposition, the operative order is Executive Order

The plaintiffs are three landlords who lease residences in Illinois. JL Properties Group owns a single-family residence in Bolingbrook. The tenant became delinquent on rent in March 2020 and, as of June 2020, owed $4500 in back rent.

Dauenbaugh owns a multi-unit residential property in Rockford. The tenants in one of the units became delinquent on rent in February 2020 and, as of June 2020, owed $1730 in back rent. Dauenbaugh served a five-day notice of delinquency on the tenants in May 2020, informing them that they must cure their delinquency or they would be evicted.

Cole's trust owns a residential property in University Park. Cole is the trustee of the trust and the landlord for the property. On March 6, 2020, Cole obtained an eviction order against the known and unknown residents of the property. The eviction order provided that the subject of the order and any unknown occupants were to vacate the property on or before March 13, 2020.

In June 2020, the plaintiffs filed a complaint against the Governor, challenging his authority to suspend the commencement of eviction proceedings against delinquent tenants and the enforcement of previously-obtained eviction orders.[2] The plaintiffs sought declaratory and injunctive relief in 10 counts.

Count I alleged that the Governor lacked the authority to enforce or extend the eviction-related moratoria because those moratoria were based on the stay-at-home order, which expired on May 29, 2020.

Count II alleged that the Governor lacked the authority under the Act to suspend the commencement of residential evictions or to impose either of the eviction-related moratoria without simultaneously providing for just compensation.

---

2021-9 (Exec. Order No. 2021-9, 45 Ill. Reg. 6390 (Apr. 30, 2021), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2021-09.aspx [https://perma.cc/X9YZ-BQXV]), which extends the eviction moratoria through May 29, 2021.) The parties discussed whether this rendered the instant appeal moot. There is no mootness issue here because the plaintiffs are challenging the legality of the eviction moratoria, which remain in effect today. Although the subsequent executive orders modified the March and April 2020 orders in certain substantive and procedural respects, they extended the moratoria on the initiation and enforcement of residential evictions. They have not modified the executive order appealed from in any material way that would affect or moot the issues raised in the case. In any event, even if there were some question of mootness here, all three of the recognized exceptions to the mootness doctrine would apply in this case (namely, the "public interest" exception, the "capable-of-repetition-but-evading-review" exception, and the "collateral consequences" exception). See *In re Alfred H.H.*, 233 Ill. 2d 345, 355-63 (2009) (discussing the three exceptions). Accordingly, this case is not moot.

[2]The plaintiffs challenge not only the two moratoria related to residential evictions, but also the Governor's suspension of the enforcement of nonresidential eviction orders. The plaintiffs refer to the "Moratoria" throughout their brief on appeal as including all three moratoria. However, the plaintiffs have residential leases, not nonresidential leases. Accordingly, they lack standing to challenge the Governor's order suspending the enforcement of nonresidential eviction orders. See, *e.g.*, *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93 (1988). Thus, when we refer to "moratoria" throughout this decision, we mean the two moratoria related to residential evictions.

¶ 17    Count III alleged that the moratoria and their extensions or renewals were invalid because they amounted to constructive possession of the plaintiffs' properties without payment of just compensation as required by section 7(4) of the Act (20 ILCS 3305/7(4) (West 2018)).

¶ 18    Count IV alleged that the moratoria violated separation of powers principles in that they encroached upon the legislature's authority to enact laws and the judiciary's authority to hear and decide cases.

¶ 19    Count V alleged that the suspension of residential eviction actions violated the Illinois Constitution's guarantee of the right to a civil jury trial.

¶ 20    Count VI alleged that, by depriving the plaintiffs of the only legal remedy available to them against delinquent tenants, the moratoria violated the plaintiffs' right to remedy and justice under article I, section 12 of the Illinois Constitution (Ill. Const. 1970, art. I, § 12).

¶ 21    Count VII alleged that the moratoria violated the equal protection clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) because they applied to some property owners but not to other similarly situated property owners, including those pursuing ejectment or replevin actions.

¶ 22    Count VIII alleged that the moratoria violated the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) because they barred access to the courts and prevented remedies for landlords whose tenants have defaulted on rent.

¶ 23    Count IX alleged that the moratoria violated the takings clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 15) because they essentially resulted in the State taking constructive possession of the plaintiffs' properties and denying their economic benefit to the plaintiffs.

¶ 24    Count X alleged that the moratoria violated the contracts clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 16) because they substantially impaired the plaintiffs' rights under their leases to seek eviction for the nonpayment of rent.

¶ 25    The plaintiffs also filed an emergency motion for temporary restraining order and preliminary injunction.

¶ 26    The Governor filed a motion to dismiss the plaintiffs' complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). The Governor argued that counts I and II should be dismissed because he was authorized to issue disaster proclamations and to suspend residential evictions pursuant to section 7 of the Act. The Governor maintained that count III should be dismissed because he did not possess or occupy the plaintiffs' properties and did not act pursuant to the subsection of the Act authorizing him to do so. He further contended that count VI should be dismissed because (1) it did not state a claim for any violation of the plaintiffs' constitutional rights and (2) in any event, the Governor's authority and duty to promote the public health outweighed any state constitutional rights the plaintiffs had.[3]

¶ 27    On July 22, 2020, the circuit court held a hearing on the plaintiffs' claims for declaratory and injunctive relief and the Governor's motion to dismiss. During the hearing, the court informed the parties that a Clay County circuit judge had ruled that the Governor lacked the authority to issue successive emergency declarations under the Act. The court acknowledged

_____

[3]The Governor's motion to dismiss the remaining counts of the plaintiffs' complaint is not at issue in this appeal. Accordingly, we do not address the Governor's arguments for the dismissal of those counts.

that the plaintiffs had expressly stated in their reply briefs that they were not challenging the Governor's authority to issue such successive declarations. However, the court asked the parties whether it should address the issue due to the existence of that Clay County order. The parties agreed that the court could address the issue but they declined to submit supplemental briefs on the matter.

¶ 28　　The circuit court issued a written decision on July 31, 2020. Before addressing the merits of the parties' motions, the court ruled that the Governor had the authority to issue successive emergency declarations under the Act.

¶ 29　　The court then addressed the plaintiffs' request for a preliminary injunction. The court found that counts I through III and V through X of the plaintiffs' complaint were not likely to succeed on the merits. However, the court found that count IV, which alleged that the eviction-related moratoria violated the separation of powers by interfering with both the legislature's and the judiciary's authority, was likely to succeed in part. The court ruled that the moratoria did not interfere with the legislature's authority because they did not change the law, but merely delayed its execution. However, the court found that "tension between the moratoria and the judiciary's authority presents an argument that is strong enough at this stage, and that Plaintiff has at least raised a fair question" as to that issue. The court suggested that the moratoria likely did not interfere with the judiciary's authority because they did not interfere with *how* the courts hear eviction cases, but only determined *when* they could do so. Accordingly, the court opined that the plaintiffs' argument on this issue was not strong. However, the court noted that it was not commenting on whether the argument would ultimately prevail. Rather, it merely found that the plaintiffs' argument met the "likelihood of success on the merits" requirement for obtaining a preliminary injunction.

¶ 30　　The circuit court also addressed the requirement that the grant of a preliminary injunction outweigh the potential harm to the State and the public. The court found that (1) both the State and the public had a strong interest in preserving public health, (2) the suspension of residential evictions was a reasonable and narrowly tailored means of protecting the public from the spread of COVID-19, (3) the harm suffered by the plaintiffs was relatively small, and (4) the State's and the public's interests weighed substantially in favor of the Governor and outweighed the harm that the eviction moratoria caused the plaintiffs. The court ruled that, "even if [the] Plaintiffs established the elements of their claims and had a reasonable likelihood of success on the merits, a balancing of harms would necessitate the denial of [a preliminary] injunction." Thus, because the court found the equities to favor the Governor, it denied the plaintiffs' motion for preliminary injunction.

¶ 31　　As to the irreparable injury requirement, the court noted that there were many aspects of the plaintiffs' claims that can be redressed by monetary damages, but that "there are other aspects which might not be compensable (at least, adequately compensable) with money damages." The court did not undergo further analysis on this point because it found that the balance of the equities tilted strongly in favor of the Governor such that preliminary injunctive relief was unwarranted.

¶ 32　　The circuit court then addressed the Governor's motion to dismiss. The court found that the same reasons that defeated the plaintiffs' motion for preliminary injunction, when viewed in the context of the section 2-615 motion to dismiss, weighed in favor of the Governor. The court granted the Governor's motion in part, dismissing counts I, II, III, and VI with prejudice. The court found that any repleading of these counts would not likely lead to cognizable claims.

The court took the matter under advisement regarding the other six counts and included Rule 304(a) language (see Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)) to allow the plaintiffs to appeal the court's dismissal of counts I, II, III, and VI.

¶ 33 In addition, the circuit court certified seven questions for consideration by this court, including whether the Act "permit[ted] the Governor to issue successive 30-day disaster declarations and emergency executive orders." The court stated that it had certified these questions "to get the case in front of a reviewing court as quickly as possible" because the case presented issues "of the utmost public importance" that had never been considered in this type of context by Illinois courts and because "some of the issues in this case are arguably not already appealable."

¶ 34 The plaintiffs filed three separate appeals: one from the dismissal of counts I, II, III, and VI; one from the denial of the motion for preliminary injunction; and one for leave to appeal from the court's certification of questions. On September 18, 2020, this court denied leave to appeal from the certification of questions. On September 25, 2020, we consolidated the other two appeals.

¶ 35 During the briefing of this case on appeal, we received a motion for leave to file an *amicus curiae* brief from a group of 29 nonprofit organizations that represent low-income tenants throughout Illinois. We granted the motion and received the brief on November 2, 2020.

¶ 36 II. ANALYSIS

¶ 37 A. Gubernatorial Authority to Issue Successive Disaster Proclamations

¶ 38 Before turning to the merits of the issues presented in this appeal, we will briefly discuss the circuit court's finding that the Governor had the authority under the Act to issue more than one disaster proclamation related to the COVID-19 pandemic. The circuit court made this finding after raising the issue *sua sponte*. This issue is not properly before us on appeal, and we decline to address it.

¶ 39 The parties did not raise the issue of the Governor's authority to make successive disaster proclamations in the proceedings before the circuit court. In fact, the plaintiffs expressly represented to the circuit court that they were *not* raising that issue. Nevertheless, the circuit court subsequently raised the issue *sua sponte*. Although the parties agreed that the circuit court could address the issue, they did not provide any supplemental briefing or argument on the matter. The circuit court injected the question of the Governor's authority to issue successive disaster proclamations into the proceedings entirely on its own and then decided the issue with no guidance or argument from the parties. The circuit court then certified the question to this court *sua sponte* pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019)), even though neither party had asked the court to do so. The plaintiffs subsequently filed an application for leave to appeal the circuit court's certified question, which we denied.

¶ 40 The parties also neglected to press the issue on appeal. Although the parties discuss the issue in their briefs, neither party contends that the issue is properly before us, and neither party actually asks us to decide the issue. The plaintiffs merely state that "[t]o the extent this Court *** deems it necessary to address this issue, and [if] the issue is indeed properly before this Court, the Plaintiffs' position is that the Governor did not have the power to make more than the one disaster proclamation he made on March 9, 2020." In his response brief, the Governor

correctly notes that the plaintiffs did not press the issue either before the circuit court or on appeal. The Governor maintains that there is therefore no need for us to address the issue, and he asks us to consider his arguments on the issue only "if this Court deems it necessary to resolve the issue."

¶ 41    Accordingly, the issue of the Governor's authority to issue successive disaster proclamations is not properly before us. The circuit court improperly manufactured an issue for appeal that was not put into controversy by the parties and that was not necessary to the resolution of the issues actually presented by the parties. Essentially, the circuit court has asked us to issue an advisory opinion on a hypothetical legal question that is beyond the scope of the issues raised by the parties. We should not accede to that request. See, *e.g.*, *DeBouse v. Bayer*, 235 Ill. 2d 544, 557 (2009) (refraining from answering a certified question that "would require substantial analysis beyond the scope of [the] litigation and would not materially advance the ultimate termination of [the] litigation"); *Spears v. Ass'n of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289, ¶ 15 ("This court refrains from answering a certified question where it calls for a hypothetical answer with no practical effect.").

¶ 42    Moreover, although the circuit court purported to determine the Governor's authority to issue successive proclamations as a separate issue, it did not issue a finding that its ruling on the issue was immediately appealable under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Accordingly, even if the issue had been properly raised by the parties below, it could not be appealed under Rule 304(a). *Lozman v. Putnam*, 328 Ill. App. 3d 761, 767 (2002); *Kurr v. Town of Cicero*, 208 Ill. App. 3d 455, 458 (1990).

¶ 43    Further, even if the circuit court had declared the issue immediately appealable under Rule 304(a), we would still be without jurisdiction to decide it under that rule because the issue is inextricably intertwined with the claims that remain before the circuit court and the circuit court's ruling on the issue does not dispose of the parties' rights on a definite part of the litigation. *Blumenthal v. Brewer*, 2016 IL 118781, ¶¶ 25-27; *Lozman*, 328 Ill. App. 3d at 768-72. Put simply, the circuit court's ruling on the issue is not a final judgment as to any particular claim. Thus, the parties could properly appeal the issue on an interlocutory basis only by means of a certified question pursuant to Rule 308. As noted above, however, the hypothetical question at issue here should not be addressed under Rule 308, and we have already denied the plaintiffs' application for leave to appeal the issue under Rule 308.

¶ 44    For all these reasons, we decline to address the issue.

¶ 45                            B. Dismissal of Counts I, II, III, and VI

¶ 46    The plaintiffs argue on appeal that the circuit court erred when it dismissed four counts of the complaint for failing to state claims upon which relief could be granted.

¶ 47    A motion to dismiss filed pursuant to section 2-615 of the Code of Civil Procedure challenges the legal sufficiency of a complaint based on alleged facial defects. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). A reviewing court must accept as true all well pled facts and all reasonable inferences arising from those facts. *Bell v. Hutsell*, 2011 IL 110724, ¶ 9. The allegations in the complaint are construed in the light most favorable to the plaintiff. *Id.* In general, a court considers only the pleadings when ruling on a section 2-615 motion to dismiss. *Mutual Tobacco Co. v. Halpin*, 414 Ill. 226, 231 (1953). We review *de novo* a circuit court's decision to grant a section 2-615 motion to dismiss. *Berry v. City of Chicago*, 2020 IL 124999, ¶ 25.

- 8 -

¶ 48    As a threshold matter, we must consider whether we have jurisdiction to reach the merits of the circuit court's decision to dismiss four counts of the complaint. See, *e.g.*, *In re Marriage of Ehgartner-Shachter*, 366 Ill. App. 3d 278, 283 (2006) (holding that the appellate court has the responsibility to consider its own jurisdiction regarding each order appealed even if the parties do not raise the issue). The circuit court's dismissal of counts I, II, III, and VI is before us based on the circuit court's Rule 304(a) finding. In relevant part, Rule 304(a) allows for an appeal from a final judgment that does not dispose of all claims if the circuit court finds that no just reason exists for delaying enforcement of the judgment, an appeal of the judgment, or both. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 49    A circuit court's inclusion of Rule 304(a) language in its order does not conclusively determine that the order is in fact appealable. *Blumenthal*, 2016 IL 118781, ¶ 24. Because Rule 304(a) applies only to final judgments, if the court's order is not in fact final, the inclusion of Rule 304(a) language is insufficient to confer appellate jurisdiction. *Id.* "An order or judgment is considered to be final and appealable for purposes of [Rule 304(a)] if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." *Id.* ¶ 23. Where a single claim is stated differently in several counts, each of which is based on the same operative facts and seeks the same relief, the dismissal of fewer than all counts is not a final judgment as to any of the party's claims as required by Rule 304(a). *Id.* ¶ 27. In such cases, the separate counts are, in effect, merely "different iterations of the very same claim." *Id.* ¶ 26. When the trial court dismisses fewer than all such counts, it disposes only of certain analytic approaches for resolving the claim; it does not finally dispose of the claim itself. *Id.* ¶¶ 26-27. Such a ruling is not subject to review under Rule 304(a). *Id.* ¶ 27. To the contrary, permitting separate appeals of such orders promotes precisely the type of piecemeal appeals that Rule 304(a) was designed to discourage. *Id.* A trial court abuses its discretion when it certifies its dismissal of some but not all of such counts for appeal under Rule 304(a), and the appellate court lacks jurisdiction to review such nonfinal orders. *Lozman*, 328 Ill. App. 3d at 771-72.

¶ 50    Moreover, even where a plaintiff's complaint raises different claims and the circuit court dismisses fewer than all of the claims, the court's dismissal order may not be appealable if the claims are so intertwined that the resolution of claims that remain before the circuit court could affect the merits of the claims pending on appeal, moot the appeal, or require the appellate court to review the issue a second time. *Id.* In such cases, Rule 304(a) does not confer appellate jurisdiction. *Id.*

¶ 51    In this case, all 10 counts of the plaintiffs' complaint seek the same relief—namely, the invalidation of the moratoria. Each claim is based on the same operative facts, *i.e.*, the Governor's issuance and renewal of the moratoria. Thus, all 10 of the counts "are, in effect, different iterations of the very same claim." *Blumenthal*, 2016 IL 118781, ¶ 26. The circuit court granted the Governor's motion to dismiss counts I, II, III, and VI, but reserved the remaining counts. Thus, the circuit court's dismissal order did not end a separate part of the controversy; it merely narrowed the plaintiffs' possible avenues to achieve the relief they requested on the ultimate question posed by the complaint. See, *e.g.*, *id.* To hold otherwise would be to promote piecemeal appeals, which Rule 304(a) discourages. See *id.* ¶ 27.

¶ 52    In addition, the claims dismissed by the circuit court are inextricably intertwined with the claims that remain pending before the circuit court. For example, counts I and IX both involve claims by the plaintiffs that the moratoria involve a taking, and count III also involves a takings

issue. However, counts I and III were dismissed, while count IX remains before the circuit court. Similarly, count II, which was dismissed, and count IV, which remains pending in the circuit court, both involve a separation of powers issue. Accordingly, appellate review of the dismissed counts might be affected or mooted by the circuit court's rulings on the related counts that remain pending in the circuit court. Moreover, future circuit court rulings on the retained counts could require us to consider the same issues again in a subsequent appeal of those rulings. In addition, any rulings on questions of law by our court could serve as law of the case for the related counts that remain before the circuit court, thereby mooting the circuit court's further consideration of those claims and making it impossible for one of the parties to successfully litigate those claims. *Jones v. Petrolane-Cirgas, Inc.*, 186 Ill. App. 3d 1030, 1032 (1989) ("Questions of law decided in a previous appeal are binding on the trial court."); see also *Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1065-66 (2000) (holding that the trial court's unappealed ruling that the parties' contract was unenforceable, which was issued during proceedings on the plaintiff's petition for a temporary restraining order (TRO), would be law of the case on remand, thereby precluding the plaintiff from obtaining any relief and from successfully appealing the defendant's motion to dismiss which involved the same legal issues decided in the TRO proceedings); see also *Akhter v. Shah*, 205 Ill. App. 3d 940 (1990) (appellate court's ruling on a legal issue in an appeal of the denial of a preliminary injunction was law of the case in a subsequent action involving the same parties and the same legal issue).

¶ 53 For the foregoing reasons, we hold that, despite the circuit court's inclusion of Rule 304(a) language regarding its dismissal of four counts of the complaint, the court's ruling was not a final and appealable judgment. Accordingly, we lack jurisdiction to review the circuit court's dismissal of counts I, II, III, and VI, and we dismiss the plaintiffs' appeal of that issue.

¶ 54                            C. Denial of the Motion for a Preliminary Injunction

¶ 55 The plaintiffs' second argument on appeal is that the circuit court erred when it denied the plaintiffs' request for a preliminary injunction.[4]

¶ 56 A preliminary injunction serves to maintain the status quo until a court decides the merits of a cause. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992). "It is an extraordinary remedy which is applicable only to situations where an extreme emergency exists and serious harm would result if it is not issued." *Id.*; see also *City of Kankakee v. Department of Revenue*, 2013 IL App (3d) 120599, ¶ 17.

¶ 57 A preliminary injunction is proper if the petitioner establishes that (1) he has a clearly ascertained right that needs protection, (2) he will suffer irreparable harm without the preliminary injunction, (3) he has no adequate remedy at law, (4) there is a likelihood of success on the merits of the underlying suit, and (5) the benefits of granting the preliminary

---

[4]The jurisdictional problem involving Rule 304(a) that arose with the circuit court's ruling on the motion to dismiss (*supra* ¶¶ 41-43) does not impact our jurisdiction over the court's ruling on the preliminary injunction. The latter ruling is before us pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which provides, in relevant part, that an appeal may be taken to this court as a matter of right from an order of the circuit court denying an injunction. Accordingly, Rule 304(a) is irrelevant to the question of whether we have jurisdiction over the court's order denying the plaintiffs' request for a preliminary injunction. We will therefore proceed with a consideration of the merits of the plaintiffs' argument.

injunction outweigh the injury to a defendant. *Scheffel & Co. v. Fessler*, 356 Ill. App. 3d 308, 313 (2005); *Danville Polyclinic, Ltd. v. Dethmers*, 260 Ill. App. 3d 108, 111 (1994). All five factors must be established in order to obtain a preliminary injunction. *Scheffel & Co.*, 356 Ill. App. 3d at 313; *Danville Polyclinic*, 260 Ill. App. 3d at 113; see also *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶¶ 68, 70-71. Accordingly, before granting a preliminary injunction, the circuit court must " 'balance the hardships and consider the public interests involved.' " *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶ 68 (quoting *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 31). The court must weigh the benefits of granting the injunction against the possible injury to the opposing party from the injunction. *Id.*; *Eldridge v. Eldridge*, 246 Ill. App. 3d 883, 889 (1993); *In re Marriage of Schwartz*, 131 Ill. App. 3d 351, 354 (1985). The court must also consider the effect that a preliminary injunction would have on the public. *Makindu*, 2015 IL App (2d) 141201, ¶ 31; see also *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶ 68; *Granberg v. Didrickson*, 279 Ill. App. 3d 886, 890 (1996). If the circuit court finds that the harm to the public or to the opposing party outweighs the benefits of granting the injunction, it must deny the motion for a preliminary injunction, even if all of the other requirements for granting a preliminary injunction are met. See, *e.g.*, *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶¶ 70-71; see also *Scheffel & Co.*, 356 Ill. App. 3d at 313; *Danville Polyclinic*, 260 Ill. App. 3d at 111, 113; *Lee /O'Keefe Insurance Agency, Inc. v. Ferega*, 163 Ill. App. 3d 997, 1003 (1987); *Hydroaire, Inc. v. Sager*, 98 Ill. App. 3d 758, 761 (1981).

¶ 58　　We review a circuit court's decision on a motion for preliminary injunction, including the court's balance of the equities, for an abuse of discretion. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62-63 (2006); see also *County of Kendall v. Rosenwinkel*, 353 Ill. App. 3d 529, 541 (2004) ("The trial court's ruling with respect to the elements of a permanent injunction, including the balance of the equities, may not be reversed absent an abuse of discretion."); *DMS Pharmaceutical Group v. County of Cook*, 345 Ill. App. 3d 430, 445 (2003) (same). An abuse of discretion occurs when the trial court's ruling is " 'arbitrary, fanciful or unreasonable, or when no reasonable person would adopt the court's view.' " *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869, ¶ 12 (quoting *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010)). However, when the decision on a preliminary injunction necessarily depends upon on a question of law, our review is *de novo*. See *Mohanty*, 225 Ill. 2d at 63.

¶ 59　　In this case, the circuit court correctly found that (1) both the State and the public had a strong interest in preserving public health and (2) these interests weighed substantially in favor of the Governor and outweighed the harm that the eviction moratoria caused the plaintiffs. The circuit court also correctly ruled that, "even if [the] Plaintiffs established the elements of their claims and had a reasonable likelihood of success on the merits, a balancing of harms would necessitate the denial of [a preliminary] injunction." Because the plaintiffs cannot obtain a preliminary injunction without establishing that the balance of hardships weighs in their favor, we affirm the circuit court's judgment on this basis alone, without addressing either the merits of the plaintiffs' claims or the remaining elements required to obtain a preliminary injunction.

¶ 60　　The special concurrence maintains that we may not affirm the circuit court's judgment on this basis because a court may not balance the hardships to the parties unless the plaintiff first establishes a *prima facie* case as to each of the other elements (*i.e.*, a clearly ascertainable right in need of protection, irreparable harm absent the injunction, the lack of an adequate remedy

- 11 -

at law, and the likelihood of success on the merits). We disagree. As noted above, even if a plaintiff makes a *prima facie* showing as to each of these elements, the circuit court may not issue a preliminary injunction unless the balance of hardships and public interests weighs in favor of granting the injunction. *Guns Save Life, Inc.*, 2019 IL App (4th) 190334, ¶¶ 70-71 (affirming the denial of preliminary injunction where the balance of hardships and the public interest weighed against granting the injunction, even though the party seeking the injunction made a *prima facie* showing as to each of the other elements); see also *Granberg*, 279 Ill. App. 3d at 890 (ruling that, in addition to making a *prima facie* showing on the other elements, plaintiffs are "required to show in the trial court that they would suffer more harm without an injunction than defendants will suffer with it"); *Sager*, 98 Ill. App. 3d at 761 (ruling that, "[i]n addition to its consideration of [the other elements], the trial court *** must balance the equities or relative inconvenience to the parties"); *Hartlein v. Illinois Power Co.*, 209 Ill. App. 3d 948, 955 (1991) (same), *rev'd on other grounds*, 151 Ill. 2d 142; see also *Scheffel & Co.*, 356 Ill. App. 3d at 313 (listing the balancing of hardships as an essential element); *Danville Polyclinic*, 260 Ill. App. 3d at 111 (same); *DMS Pharmaceutical Group*, 345 Ill. App. 3d at 445 (same). Put in terms of formal logic, while a *prima facie* showing as to the other elements may be a *necessary* condition to obtaining a preliminary injunction, it is not a *sufficient* condition. To obtain an injunction, the plaintiff must also show that the balance of hardships favors an injunction.

¶ 61    Accordingly, we may affirm the circuit court's ruling based on the equities alone. Where the balance of hardships preludes a preliminary injunction, as here, it would be unnecessary and pointless to address the other elements because the plaintiffs' showing on those elements would not change our decision. Expending judicial resources on such a meaningless exercise would defy both precedent and common sense. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 (courts of review do not consider issues where the result will not be affected regardless of how those issues are decided).

¶ 62    There are other good reasons not to address the plaintiffs' showing as to the four remaining elements. Whether the plaintiffs' have shown a likelihood of success on the merits turns on pure questions of law, such as whether the Act authorizes the Governor to issue an eviction moratorium. " '[Q]uestions of law decided in a previous appeal are binding on the trial court.' " *Scheffel & Co.*, 356 Ill. App. 3d at 312 (quoting *Jones*, 186 Ill. App. 3d at 1032). The parties will litigate the Governor's motion to dismiss on remand, and the plaintiffs could move for a permanent injunction to halt the eviction moratorium. Both the motion to dismiss and any future request for a permanent injunction will involve the same legal issues presented in this appeal. If we affirm the circuit court's determination that the plaintiffs failed to make a *prima facie* showing of the likelihood of success on the merits, we will have construed the relevant statutory provisions against the plaintiffs and decided legal issues that will control any litigation on remand. Our rulings on these issues would make it impossible for the plaintiffs to obtain a permanent injunction or to defeat the Governor's motion to dismiss. *Strata Marketing, Inc.*, 317 Ill. App. 3d at 1065-66 (holding that the trial court's unappealed ruling that the parties' contract was unenforceable, which was issued during proceedings on the plaintiff's petition for a TRO, would be law of the case on remand, thereby precluding the plaintiff from obtaining any relief and from successfully appealing the defendant's motion to dismiss that involved the same legal issues decided in the TRO proceedings); see also *Akhter*, 205 Ill. App. 3d 940 (appellate court's ruling on a legal issue in an appeal of the denial of a preliminary

injunction was law of the case in a subsequent action involving the same parties and the same legal issue).

¶ 63    Moreover, if we affirm on the likelihood of success issue, we will also have decided several constitutional issues that will be central to any future litigation on remand. A court of review should avoid deciding constitutional questions when a case can be decided on other grounds. *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 38; *People v. Nash*, 173 Ill. 2d 423, 432 (1996); *Marconi v. City of Joliet*, 2013 IL App (3d) 110865, ¶ 16; see also *People v. Jackson*, 2013 IL 113986, ¶ 14 ("courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases"). The resolution of constitutional issues is particularly inappropriate during review of a circuit court's decision to grant or deny a preliminary injunction because the record is undeveloped in such cases. *People ex rel. Sklodowski v. State*, 162 Ill. 2d 117, 132 (1994); *School District of Wilkinsburg v. Wilkinsburg Education Ass'n*, 667 A.2d 5 (Pa. 1995); *Savage Towing Inc. v. Town of Cary*, 814 S.E.2d 869, 874 (N.C. Ct. App. 2018).

¶ 64    For these additional reasons, and the others stated above, we affirm the circuit court's denial of a preliminary injunction solely on the basis of the equities.

¶ 65                                III. CONCLUSION

¶ 66    For the foregoing reasons, we hold that we lack jurisdiction to review the decision of the circuit court of Will County that dismissed counts I, II, III, and VI of the plaintiffs' complaint. We therefore dismiss the plaintiffs' appeal as to that issue. We also hold that the circuit court did not err when it denied the plaintiffs' motion for a preliminary injunction.

¶ 67    Affirmed in part and dismissed in part.

¶ 68    PRESIDING JUSTICE McDADE, specially concurring:

¶ 69    I agree that this case should be dismissed in part and affirmed in part on appeal. However, I write separately because I disagree with substantial portions of the majority's decision.

¶ 70                    I. Issues Regarding the Authority to Promulgate
                          Successive 30-day Disaster Proclamations

¶ 71    First, I cannot agree with the majority's attempt to characterize the raising of the successive 30-day disaster proclamation issue as solely the result of improper judicial meddling. While I, too, had initially regarded inclusion of this issue as judicial overreach, a careful reading of the circuit court's 49-page written order demonstrates that raising this issue reflected the court's recognition of a legitimate threshold question that had arisen after the initial pleadings were filed in this case. The plaintiffs filed their complaint on June 23, 2020, and their emergency motion for temporary restraining order and preliminary injunction the following day. On July 2, 2020, the Clay County circuit court issued an anomalous decision finding that the Governor lacked any authority to make more than one 30-day emergency disaster declaration and that any derivative executive order issued after April 8, 2020, was void *ab initio*. The order implicated the viability of the April 30, 2020, order being challenged by the plaintiffs. The Governor's response to the plaintiffs' emergency motion was filed on July 6 and noted the

issuance of the Clay County decision. In their reply filed on July 13, the plaintiffs did not acknowledge that decision.

¶ 72 On July 22, 2020, the circuit court held a hearing on the pending motions. The record contains no transcript of that hearing because of a technological problem with the recording. Thus, the only authoritative account we have of what occurred at that hearing is the court's summary contained in its order. That summary stated:

> "During oral argument, the Court noted that a judge in Clay County has held, among other things, that the Governor lacked authority to issue successive emergency declarations under the EMAA, and therefore declared that 'any executive orders in effect after April 8, 2020, relating to COVID-19, and finding their authority under the emergency powers of Section 7 of the [EMAA] are void *ab initio*.' *See Bailey v. Pritzker*, Clay County Case No. 20-CH-6. Of course, if the Governor's actions are *truly* void, that impacts this case. Plaintiffs stated in their reply briefs that they were not initially raising that issue, but opined at oral argument that the Clay County judge was correct. The Court inquired whether, in light of the Clay County rulings, it ought to consider the issue. *Both sides agreed it would be necessary and appropriate for the Court to examine (without further briefing) the question of whether the Governor can issue successive emergency declarations and executive orders under the EMAA.*" (Emphasis in original and added.)

In other words, it appears the following sequence occurred: (1) Judge Anderson noted the existence of a Clay County circuit court ruling that the Governor lacked the authority to issue successive 30-day disaster proclamations, (2) the plaintiffs reversed the position they had taken in their reply brief and argued that the Clay County circuit court ruling was correct, (3) Judge Anderson asked the parties whether he ought to consider the issue, and (4) the parties agreed that it was "necessary and appropriate" for Judge Anderson to consider the issue and that doing so would not require additional briefing. The majority's characterization of what transpired at the July 22, 2020, hearing is markedly different and paints a distinctly negative gloss on the circuit court's inclusion of this issue.

¶ 73 The majority claims that "[t]he parties agreed that the court *could* address the [successive 30-day disaster proclamation] issue but they *declined* to submit supplemental briefs on the matter." (Emphases added.) *Supra* ¶ 27. The majority also later claims that "[t]he circuit court injected the question of the Governor's authority to issue successive disaster proclamations into the proceedings entirely on its own and then decided the issue with no guidance or argument from the parties." *Supra* ¶ 39. However, it is clear from the circuit court's order that the parties in fact agreed that it was *necessary* and appropriate to address the issue. Further, we do not know why the parties did not believe additional briefing was necessary. It may be that they believe they had already provided sufficient authority on the issue in their pleadings. It is a colorable conclusion to have reached.

¶ 74 In their motion for preliminary injunction, the plaintiffs argued, *inter alia*, that the Governor lacked the authority to extend the moratoria because that authority was inextricably linked to the authority to issue a stay-at-home order. Thus, the plaintiffs' argument continued, the Governor could not extend the moratoria once he allowed the stay-at-home order to lapse. In response, the Governor stated, *inter alia*, that the plaintiffs' argument was misguided because the Governor's authority to extend the moratoria was connected solely to his authority to declare disasters for periods of 30 days. The Governor argued:

- 14 -

"As the plain language [of 20 ILCS 3305/7 (West 2018)] makes clear, the Governor is authorized to exercise defined powers under the Emergency Management Act for 30 days each time he declares by proclamation that a disaster exists. And as numerous courts have recently confirmed, the Governor is not limited to one proclamation per disaster but rather may issue successive proclamations—and exercise powers under the Emergency Management Act for additional 30-day periods—so long as a disaster continues to exist. *See Edwardsville / Glen Carbon Chamber of Commerce v. Pritzker*, No. 20-MR-550, slip op. at 6-8 (Ill. 3d Jud. Cir. Ct. June 5, 2020), attached as exhibit 3; *Running Central, Inc. v. Pritzker*, No. 2020 CH 105, slip op. at 4-5 (Ill. 7th Jud. Cir. Ct. May 21, 2020), attached as Exhibit 4; *Mahwitzki v. Pritzker*, No. 20 C 04089, slip op. ¶¶ 21-27 (Ill. Cook Cty. Cir. Ct. May 8, 2020), attached as Exhibit 5; *Cassell v. Snyders*, No. 20 C 50153, 2020 WL 2112374, at *13-*14 (N.D. Ill. May 3, 2020), attached as Exhibit 6."

In a footnote, the Governor acknowledged the existence of the Clay County circuit court judge's decision in which it ruled, without analysis, that the Governor did not have the authority to issue successive 30-day disaster proclamations.

¶ 75       In their reply, the plaintiffs assented to the above-quoted position of the Governor:

"What this case does not impugn is the power of the Governor to declare an emergency under the Illinois Emergency Management Act. 20 ILCS 3305, *et seq.* ('Act'). Nor does it challenge the Governor's power to declare more than one emergency, which was addressed and affirmed in several of the opinions and orders discussed by the Governor in his opposition papers. (hereinafter 'Opp. Mem.')."

Despite this assent, the circuit court's order indicated that, at the hearing on July 22, the plaintiffs "opined at oral argument that the Clay County judge was correct" that the Governor lacked the authority to issue successive 30-day disaster proclamations. Thus, the plaintiffs seized on that aberrant decision and reversed their initial position on the matter. Therefore, if anyone "injected" (*supra* ¶ 39) the issue into the case, it appears that the plaintiffs did so and not the circuit court, or at least not to the extent that the majority claims.

¶ 76       In addition, I see no basis for the majority's statement in paragraph 41 that "[e]ssentially, the circuit court has asked us to issue an advisory opinion on a hypothetical legal question that is beyond the scope of the issues raised by the parties. We should not accede to that request." *Supra* ¶ 41. The majority then cites to two cases, *DeBouse* and *Spears*, that specifically addressed certified questions. However, for whatever its purposes in paragraph 41 may be, the majority has seemingly ignored the fact that we denied the circuit court's certified questions. The resolution of this appeal does not involve answering any certified questions or any requests from the circuit court on a hypothetical legal question. Any suggestion that we have been placed in that position is curious and unnecessary—and, in my opinion, wrong.

¶ 77       More specifically to that point, our recognition that the issues in this case are not moot would preclude a finding that the circuit court lacked jurisdiction. However, a very practical and open question remains. If the decision of the Clay County circuit court, aberrant though it was, was correct, and if the 30-day disaster declaration that the plaintiffs sought to challenge was issued without legal authority and was void from its inception, was there an actual controversy to decide? This strikes me as a legitimate inquiry and one that would be properly before us on appeal but for the fact that it implicates the other six counts that remain unresolved

- 15 -

in the circuit court. See *supra* ¶ 43.

See *supra* ¶ 43.

¶ 78                    II. Issues Regarding the Motion for Preliminary Injunction Analysis

¶ 79        Second, I disagree with the majority's analysis in reviewing the circuit court's denial of the plaintiffs' motion for preliminary injunction. In particular, the majority's analysis adopts a misconstruction of long-settled law regarding preliminary injunctions and actively perpetuates bad law.

¶ 80        In paragraph 57, the majority cites to *Scheffel* and *Danville Polyclinic* and claims that there are *five* elements that a movant must establish to obtain a preliminary injunction—the fifth factor being the balancing of the equities. *Supra* ¶ 57. *Scheffel* and *Danville Polyclinic* are incorrect in this regard. *Scheffel* cited to *Danville Polyclinic*, and *Danville Polyclinic* cited *Lee/O'Keefe*, 163 Ill. App. 3d at 1002-03. However, *Lee/O'Keefe* did not hold that the balancing of the equities was a fifth factor:

> "In order for a preliminary injunction to issue the party seeking it must establish by a preponderance of the evidence (1) he possesses a certain and clearly ascertainable right or interest needing protection; (2) there is no adequate remedy at law; (3) irreparable harm will result if it is not granted; and (4) there is a reasonable likelihood of success on the merits. *Morrison Metalweld Process Corp. v. Valent*[, 97 Ill. App. 3d 373 (1981); *Image Supplies, Inc. v. Hilmert*, 71 Ill. App. 3d 710 (1979)]. In addition to consideration of the above criteria, the trial court must conclude that the benefits of granting the injunction outweigh the possible injury which defendant might suffer as a result thereof. [*Packaging House, Inc. v. Hoffman*, 114 Ill. App. 3d 284 (1983); *Booth v. Greber*, 48 Ill. App. 3d 213 (1977)]." *Id.*

*Danville Polyclinic* misconstrued *Lee/O'Keefe*. *Scheffel* in turn repeated that misinterpretation. Here, the majority perpetuates this misinterpretation because it would rather address only whether the balance of the equities prohibited the granting of the preliminary injunction.

¶ 81        The majority ignores that the proper analysis requires a court first to assess whether a movant has established a *prima facie* case allowing for the issuance of a preliminary injunction before it considers the balance of the equities. This is long-standing law that both *Scheffel* and *Danville Polyclinic* contradict. The United States Supreme Court has recognized since at least 1862 that a *prima facie* case of right to an injunction must be shown before a court will balance the equities to determine if the injunction should in fact issue:

> "Where an injunction is granted without a trial at law, it is usually upon the principle of preserving the property, until a trial at law can be had. A strong *prima facie* case of right must be shown, and there must have been no improper delay. The Court will consider all the circumstances and exercise a careful discretion. [Citation.]
>
>                                          * * *
>
> After the right has been established at law, a Court of Chancery will not, *as of course*, interpose by injunction. It will consider all the circumstances, the consequences of such action, and the real equity of the case." (Emphasis in original.) *Parker v. Winnipiseogee Lake Cotton & Woollen Co.*, 67 U.S. 545, 552-53 (1862).

Our supreme court adopted this principle in *Haack v. Lindsay Light & Chemical Co.*, 393 Ill. 367, 372 (1946) (citing *Parker*, 67 U.S. at 552-53), and myriad appellate court cases exist that also recognize this principle. See, *e.g.*, *Lumbermen's Mutual Casualty Co. v. Sykes*, 384 Ill.

App. 3d 207, 232 (2008); *Shodeen v. Chicago Title & Trust Co.*, 162 Ill. App. 3d 667, 672-73 (1987); *In re Marriage of Schwartz*, 131 Ill. App. 3d 351, 354 (1985); *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 682 (1978). These cases and many others show that the movant's burden of establishing a *prima facie* case for a preliminary injunction does not include proving that the equities weigh in the movant's favor.

¶ 82    In addition, the majority includes a "see" citation to *Guns Save Life* to support its erroneous claim that there are five factors a movant must establish to be entitled to a preliminary injunction. The majority misconstrues *Guns Save Life*. The decision specifically acknowledged that there are *four* elements and that the balancing of the equities does not take place until after a movant has met its burden on those four elements:

> "To succeed on a motion for a preliminary injunction, a plaintiff must show: '(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case.' *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 *** (2006). For each element, 'the plaintiff must raise a "fair question" that each of the elements is satisfied.' *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 31 ***. However, '[m]ere opinion, conclusion, or belief will not suffice.' *McErlean* [*v. Harvey Area Community Organization*, 9 Ill. App. 3d 527, 529 (1972)]. '*If these elements are met, then the court must balance the hardships and consider the public interests involved.*' *Makindu*, 2015 IL App (2d) 141201, ¶ 31." (Emphasis added.) *Guns Save Life*, 2019 IL App (4th) 190334, ¶ 37.

Later, the *Guns Save Life* court also clarified that it is the court, not the plaintiffs, that balances the equities, stating:

> "Additionally, when a plaintiff establishes a fair question about its entitlement to relief for a preliminary injunction and after courts consider the status quo, courts must also balance the equities associated with the claim. When the elements of a preliminary injunction are met, 'the court must balance the hardships and consider the public interests involved.' *Makindu*, 2015 IL App (2d) 141201, ¶ 31." *Id.* ¶ 68.

Quite simply, *Guns Save Life* does not even remotely support the majority's position.

¶ 83    I would also emphasize that while another case the majority cites in paragraph 57 claims that there are five elements (*Grandberg*, 279 Ill. App. 3d at 889 (listing "the plaintiff will suffer more harm without the injunction than the defendant will suffer with it" as a fifth element)), that case suffers from the same error that appears in *Scheffel* and *Danville Polyclinic*. That is, when one traces the cases back that are cited by *Grandberg*, one discovers that, at some point in the chain, a court misconstrued a case that listed the four traditional elements and also mentioned the subsequent consideration of the equities, as requiring five elements. *Grandberg* cited *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 387 (1985), which lists only the four traditional elements. *Grandberg* also cited *New Park Forest Associates II v. Rogers Enterprises, Inc.*, 195 Ill. App. 3d 757, 761 (1990), which also listed five elements. However, the chain of cases resulting in the *New Park Forest Associates* citation all have their origin in cases that list only the four traditional elements.

¶ 84    Furthermore, the majority cites only appellate court cases in paragraph 57 for the erroneous proposition that a preliminary injunction movant must establish five elements. To my knowledge, there are no supreme court cases that stand for that proposition. Additionally, I am unaware of any cases from our district that so hold.

¶ 85    The lack of supreme court precedent in support of the majority's paragraph 57 is also significant for another reason. As our supreme court has stated in *Mohanty*, "[o]n appeal, we examine only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights." *Mohanty*, 225 Ill. 2d at 62 (citing *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002), and *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 366 (2001)). The majority does not even acknowledge the role of the *prima facie* burden until paragraph 60 when it does so only to challenge this special concurrence. *Supra* ¶ 60. Not one of the cases cited by the majority in paragraph 60, which are all appellate court cases, supports the position that a reviewing court can skip the *prima facie* analysis altogether and resolve an appeal solely on the balancing of the equities. Consequently, the majority's conclusion in the next paragraph that "we may affirm the circuit court's ruling based on the equities alone" (*supra* ¶ 61) finds no support in the law and runs afoul of the supreme court's contrary directive in *Mohanty* (*Mohanty*, 225 Ill. 2d at 62).

¶ 86    Additional aspects of the majority's paragraph 61 are worth noting. The majority states:

> "Where the balance of hardships precludes a preliminary injunction, as here, it would be unnecessary and pointless to address the other elements because the plaintiffs' showing on those elements would not change our decision. Expending judicial resources on such a meaningless exercise would defy both precedent and common sense." *Supra* ¶ 61.

These are remarkable statements. First, the majority states in the previous sentence that it can decide the appeal *solely* on the balance of the equities. *Supra* ¶ 61. If so, then why is our jurisprudence replete with cases requiring a plaintiff to prove, and the courts to determine, the right to a preliminary injunction based on four elements?

¶ 87    Second, these statements are self-defeating. Even if the majority were correct that a reviewing court could skip the *prima facie* analysis and resolve an appeal solely on the balance of the equities, the majority has provided no argument or support that such an approach is mandatory. Thus, deciding the appeal solely on any of the four elements required for a *prima facie* case would not be any more pointless than deciding the case solely on the balance of the equities.

¶ 88    Third, the irony in the majority's "see" citation to paragraph 10 of *Commonwealth Edison* is patent. *Commonwealth Edison* is a case involving a question of mootness, and paragraph 10 of that opinion provides nothing more than general statements of the law pertaining to mootness. *Commonwealth Edison*, 2016 IL 118129, ¶ 10. In this case, the majority specifically states in footnote 1 to paragraph 9 that this case is not moot. *Supra* ¶ 9 n.1. Principles of mootness have no application in this case, and *Commonwealth Edison* accordingly provides no support for the majority's remarkable and self-defeating statements in paragraph 61.

¶ 89    In sum, I respectfully submit that the majority's analysis of the preliminary injunction issue is replete with errors. The issue should be decided on the *prima facie* case requirement. See *Mohanty*, 225 Ill. 2d at 62. I would choose to decide the issue on the likelihood of success element and would hold that the plaintiffs failed to meet their burden of proof on that element, such that the circuit court did not err when it denied their motion for a preliminary injunction. *Grchan v. Illinois State Labor Relations Board*, 291 Ill. App. 3d 571, 573 (1997) (holding that the failure to establish a *prima facie* case on any one of the four factors is fatal to a claim for a

preliminary injunction). My analysis based on the *prima facie* elements is included here for purposes of completeness.

¶ 90　　A preliminary injunction serves to maintain the *status quo* until a court decides the merits of a cause. *Hartlein*, 151 Ill. 2d at 156. "It is an extraordinary remedy which is applicable only to situations where an extreme emergency exists and serious harm would result if it is not issued." *Id.* The party seeking a preliminary injunction bears the burden of establishing *four* factors: "(1) a clearly ascertained right in need of protection exists; (2) irreparable harm will occur without the injunction; (3) there is no adequate remedy at law for the injury; and (4) success on the merits is likely." *Id.* Generally, we review a circuit court's decision on a motion for preliminary injunction for an abuse of discretion. *Mohanty*, 225 Ill. 2d at 62-63. However, when the decision on a preliminary injunction is predicated upon a question of law, this court reviews the decision *de novo*. *Id.* at 63. In this case, whether the plaintiffs established a *prima facie* case for a preliminary injunction on the 10 counts in the complaint depended solely upon questions of law, as the facts in this case are not in dispute. Thus, *de novo* review is appropriate. Further, because *de novo* review means this court is to conduct the same analysis the circuit court would perform (*Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 20), our task is to determine whether the plaintiffs established a *prima facie* case for a preliminary injunction (*Mohanty*, 225 Ill. 2d at 62; *Happy R. Securities, LLC v. Agri-Sources, LLC*, 2013 IL App (3d) 120509, ¶ 32).

¶ 91　　The failure to establish a *prima facie* case on any one of the four factors is fatal to a claim for a preliminary injunction. *Grchan*, 291 Ill. App. 3d at 573 (citing *Hartlein*, 151 Ill. 2d at 156). I would address first whether the plaintiffs established a likelihood of success on the merits of their claims. To establish that success on the merits is likely, the moving party "need only raise a fair question regarding the existence of a claimed right and a fair question that he will be entitled to the relief prayed for if the proof sustains the allegations." *Kalbfleisch v. Columbia Community Unit School District No. 4*, 396 Ill. App. 3d 1105, 1114 (2009).

¶ 92　　In counts I to III, the plaintiffs asserted various attacks on the Governor's authority to impose the moratoria. Specifically, count I alleged that the moratoria could only be imposed if the stay-at-home order were in place, and counts II and III variously alleged that the moratoria amounted to a taking requiring the payment of just compensation. Additionally, count II alleged that the imposition of the moratoria was not authorized by the statutory subsections cited by the Governor.

¶ 93　　First, section 7 of the Act requires nothing more for a disaster proclamation than the existence of a disaster. 20 ILCS 3305/7 (West 2018). The stay-at-home requirement and the suspension of the commencement of eviction actions and enforcement of eviction orders were actions the Governor deemed necessary to address the disaster, but they were not mutually dependent. The Governor declared that the disaster continued to exist and determined that the stay-at-home order was no longer necessary to address it as of late May 2020, but that the orders suspending the commencement of eviction actions and enforcement of eviction orders were still necessary. The Act does not prohibit such a decision.

¶ 94　　Second, there is nothing persuasive in the complaint to show that the moratoria constituted a taking. Section 7(4) of the Act addresses the need for the State to pay just compensation under limited circumstances if it "take[s] possession of, and to acquire full title or a lesser specified interest in, any personal property as may be necessary to accomplish the objectives [of the Act]." 20 ILCS 3305/7(4) (West 2018). The Governor did not cite section 7(4) as

- 19 -

authority for imposing the moratoria. Additionally, it is indisputable that the State did not take possession of any personal property by imposing the moratoria. Indeed, the plaintiffs have admitted that they continue to have ownership of their properties and that their tenants have retained possession of their leased premises.

¶ 95 Third, an examination of the moratoria in relation to the Act reveals that they are in fact authorized. Section 7 of the Act authorizes the Governor to declare that a disaster exists. 20 ILCS 3305/7 (West 2018). Disasters include epidemics and public health emergencies. 20 ILCS 3305/4 (West 2018). Once the Governor has declared a disaster exists, section 7 grants him or her the authority to exercise certain enumerated powers. 20 ILCS 3305/7 (West 2018). Those powers include "[t]o control ingress and egress to and from a disaster area, the movement of persons within the area, and the occupancy of premises therein." 20 ILCS 3305/7(8) (West 2018). We find that this broad grant of authority to the Governor reasonably encompasses his ability to impose the moratoria. The suspension of the commencement of eviction actions and enforcement of eviction orders certainly operates to control the movement of persons within environs deemed a disaster area due to a pandemic and the occupancy of premises in that area.

¶ 96 For the foregoing reasons, because the Act authorized the Governor's imposition of the moratoria, I would hold that the plaintiffs have not shown a likelihood of success on counts I to III.

¶ 97 In count IV, the plaintiffs alleged that the moratoria violated separation of powers principles by encroaching on the legislature's authority to enact laws and the judiciary's authority to hear and decide cases.

¶ 98 The Illinois Constitution mandates the separation of the legislative, executive, and judicial branches of government and provides that "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Nevertheless, the doctrine also recognizes that some overlap between the branches exists. *In re D.S.*, 198 Ill. 2d 309, 321-22 (2001).

¶ 99 The power to enact laws is reserved for the legislature; it cannot delegate this function to the executive branch. *American Federation of State, County & Municipal Employees (AFSCME), Council 31 v. State*, 2015 IL App (1st) 133454, ¶ 21. "This means that the legislature cannot delegate its power to determine what the law should be, but it can delegate the power to execute the law as long as it provides sufficient standards to guide the delegate in the enforcement of the law." *Id.* When the legislature delegates authority, it must identify "(1) [t]he persons and activities potentially subject to regulation; (2) the harm sought to be prevented; and (3) the general means intended to be available to the administrator to prevent the identified harm." (Emphases omitted.) *Stofer v. Motor Vehicle Casualty Co.*, 68 Ill. 2d 361, 372 (1977).

¶ 100 In passing the Act, the General Assembly identified that the nature of disasters required the Governor to possess certain enumerated powers "to insure that this State will be prepared to and will adequately deal with any disasters, preserve the lives and property of the people of this State and protect the public peace, health, and safety ." 20 ILCS 3305/2(a)(2) (West 2018). As previously noted, those powers appear in section 7 of the Act and include the authority "[t]o control ingress and egress to and from a disaster area, the movement of persons within the area, and the occupancy of premises therein." 20 ILCS 3305/7(8) (West 2018).

¶ 101 The moratoria are not an exercise of enacting law. Rather, they operate to suspend the enforcement of the laws regulating evictions, an action we believe is clearly within the

permissible bounds of section 7(8) of the Act. Accordingly, I would hold that the moratoria do not encroach upon the legislature's authority to enact laws.

¶ 102    They are also not an exercise of judicial power. The judicial power includes the authority to hear and decide cases, as well as to implement administrative and supervisory authority over the courts. *Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726*, 167 Ill. 2d 180, 192 (1995). We note that

> "[l]egislative enactments may regulate the court's practice so long as they do not dictate to the court how it must adjudicate and apply the law or conflict with the court's right to control its procedures. [Citation.] This court has repeatedly recognized that the legislature may impose reasonable limitations and conditions upon access to the courts. [Citation.]" *McAlister v. Schick*, 147 Ill. 2d 84, 95 (1992).

¶ 103    The moratoria do not operate to usurp the judiciary's functions. Again, the moratoria only operate to suspend the time in which individuals can bring eviction actions to the courts. Accordingly, I would hold that the moratoria do not encroach upon the judicial power.

¶ 104    Because the moratoria do not usurp legislative or judicial authority, we hold that the plaintiffs have not shown a likelihood of success on count IV.

¶ 105    In count V, the plaintiffs alleged, in a conclusory manner, that the suspension of residential eviction actions deprived them of their right to a civil jury trial under article I, section 13 of the Illinois Constitution.

¶ 106    Article I, section 13 of the Illinois Constitution provides that "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, § 13. " 'It is well settled that the object of a constitutional provision guaranteeing the right of a trial by jury is to preserve the substance of the right rather than to prescribe the details of the methods by which it shall be exercised and enjoyed.' " *Olson v. Chicago Transit Authority*, 1 Ill. 2d 83, 85 (1953) (quoting *People v. Kelly*, 347 Ill. 221, 224 (1931)).

¶ 107    Count V fails to make even a cursory showing that the suspension of residential eviction actions constitutes a deprivation of the right to a civil jury trial. It is undisputed that the Governor's order merely suspended the right to pursue such actions and did not eliminate it. The two plaintiffs who have not been able to pursue eviction actions will be able to do so once the Governor determines that the disaster is over or the suspension of residential eviction actions is no longer necessary to address the disaster. For these reasons, I would hold that the plaintiffs have not shown a likelihood of success on the merits of count V.

¶ 108    In count VI, the plaintiffs alleged that the moratoria deprived them of the only legal remedy available to them for tenants who were in arrears on rent payments, thereby violating the right to remedy and justice under article I, section 12 of the Illinois Constitution (Ill. Const. 1970, art. I, § 12).

¶ 109    Article I, section 12 of the Illinois Constitution provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property, or reputation. He shall obtain justice by law, freely, completely, and promptly." *Id.* Our supreme court has "held repeatedly that this constitutional provision is merely an expression of philosophy and not a mandate that a certain remedy be provided in any specific form." *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 83 (2002). It is axiomatic, then, that this provision cannot serve as a stand-alone basis for the plaintiffs' claim. For this

reason, I would hold that the plaintiffs have not shown a likelihood of success on the merits of count VI.

¶ 110     In count VII, the plaintiffs alleged that the moratoria violated the equal protection clause in that they were aimed at ensuring people stayed in their homes during the public health emergency, but they only applied to some property owners and not other similarly situated property owners, including those pursuing ejectment or replevin actions.

¶ 111     In relevant part, article I, section 2 of the Illinois Constitution provides that "[n]o person shall *** be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. This clause "guarantees that similarly situated individuals will be treated in a similar fashion, unless the government can demonstrate an appropriate reason to treat them differently." *In re Johnathon C.B.*, 2011 IL 107750, ¶ 116. Notably, the equal protection clause does not prohibit the legislature from distinguishing groups of people from each another; it only prohibits the distinctions if they are unrelated to the purpose of the legislation. *Id.*

¶ 112     The plaintiffs' claim is self-defeating. It assumes that landlords are in the same protected group as other property owners, but it also acknowledges that other types of property owners are subject to different laws. For example, the plaintiffs point out that some property owners can seek ejectment under article VI of the Code of Civil Procedure, others are subject to the mortgage foreclosure provisions in article XV, and others can seek replevin under article XIX. But the fact that the legislature has seen fit to provide different remedies for these groups is in fact evidence that they are not alike. This dissimilarity includes the plaintiffs, who want to seek evictions under article IX. Under these circumstances, I would hold that the plaintiffs have not shown a likelihood of success on the merits of their equal protection claim.

¶ 113     In count VIII, the plaintiffs alleged that the moratoria violated the due process clause because they bar access to the courts and prevent remedies for landlords whose tenants have defaulted on rent. However, the plaintiffs do not argue in their brief that they were likely to succeed on the merits of this claim. Accordingly, the plaintiffs have forfeited the issue. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010). Absent forfeiture, we have already held that the moratoria did not violate the right to remedy and justice or the right to a civil jury trial. Accordingly, I would hold that the plaintiffs have not shown a likelihood of success on count VIII.

¶ 114     In count IX, the plaintiffs alleged that the moratoria violated the takings clause because they essentially resulted in the State taking constructive possession of the plaintiffs' properties and denying their economic benefit to the plaintiffs. However, the plaintiffs do not argue in their brief that they were likely to succeed on the merits of this claim. Accordingly, the plaintiffs have forfeited the issue. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Vancura*, 238 Ill. 2d at 369.

¶ 115     In count X, the plaintiffs alleged that the moratoria violated the contracts clause because they substantially impaired the plaintiffs' rights under their leases to seek eviction for the nonpayment of rent. However, the plaintiffs do not argue in their brief that they were likely to succeed on the merits of this claim. Accordingly, the plaintiffs have forfeited the issue. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Vancura*, 238 Ill. 2d at 369.

¶ 116     In sum, I would hold that the plaintiffs have not established a likelihood of success on any of the 10 counts in their complaint. Due to this failure, I would not address whether the plaintiffs have satisfied the other three factors establishing a *prima facie* case and entitling

them to a preliminary injunction. See *Hartlein*, 151 Ill. 2d at 156. Therefore, I would affirm the circuit court's decision that denied the plaintiffs' motion for preliminary injunction.